**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**


DERRICK ARNELL MONDOWNEY,     \*

Plaintiff     \*

v.     \*     Civil Action No. ELH-17-1538

BALTIMORE COUNTY DETENTION     \*
CENTER, *et al*.
     \*
Defendants

     \*\*\*\*\*\*\*\*\*\*\*\*\*


DERRICK ARNELL MONDOWNEY,     \*

Plaintiff     \*

v.     \*     Civil Action No. ELH-16-3932

BALTIMORE COUNTY DETENTION     \*
CENTER, *et al*.
     \*
Defendants

     \*\*\*

## <u>MEMORANDUM OPINION</u>

Derrick Arnell Mondowney is the self-represented plaintiff in two related prisoner civil rights cases. Mondowney is an inmate currently confined at the Jessup Correctional Institution ("JCI"). But, he was previously held at the Baltimore County Detention Center ("BCDC"). He filed his suits pursuant to 42 U.S.C. § 1983, alleging that he was denied constitutionally adequate medical care while detained at BCDC.

In Case ELH-16-3932 ("Case I"), filed on December 8, 2016, plaintiff sued BCDC. *Id.,* ECF 1.[1] In supplemental complaints (ECF 4, ECF 5, ECF 6),[2] with exhibits, plaintiff added several defendants: Deborah Richardson, Dr. Barnes, S. Verch, Bonita Cosgrove, Sgt. Leake, and Sgt. Church. The case was closed because plaintiff moved and failed to provide the court with a new address. ECF 9. However, plaintiff's motion for reconsideration (ECF 13) was granted and the case was reopened. ECF 14. The motion for leave to proceed in forma pauperis, docketed in Case I at ECF 19, shall be granted.

On June 5, 2017, plaintiff filed *Mondowney v. BCDC, et al.*, Civil Action No. ELH-17-1538 ("Case II"), with numerous exhibits.[3] In substance, it is essentially a duplicate of Case I, with additional defendants. *See* Case I, ECF 20. Apparently, plaintiff had been transferred from BCDC to JCI and, due to the dismissal of Case I, he filed Case II.

In Case II, defendants Correct Care Solutions, LLC ("CCS") and Zowie Barnes, M.D. (the "Medical Defendants") have moved to dismiss or, in the alternative, for summary judgment. Their motion is supported by a memorandum (ECF 24-1) (collectively, "Medical Defendants' Motion") and exhibits. Defendants BCDC, Bonita Cosgrove, Stephen Verch, Sergeant Ronald Church, and Sergeant Martin Leake (the "County Defendants") have filed a similar motion (ECF 27), supported by a memorandum (ECF 27-1) (collectively, "County Defendants' Motion") and

---

[1] Case I was initially assigned to Judge J. Frederick Motz. It was reassigned to me on October 31, 2017. *See* Docket.

[2] Citations are to the court's electronic docket.

[3] Case II was also assigned initially to Judge Motz. It was reassigned to me on October 31, 2017. *See* Docket.

exhibits.   Plaintiff opposes the motions, and has submitted exhibits.  *Id.*, ECF 29; ECF 30; ECF 31.[4]  The Medical Defendants have replied.  *Id.*, ECF 32.

The motions were docketed only in Case II.  Given that the cases are related they shall be consolidated for purposes of the disposition of the motions.[5]

No hearing is needed to resolve these matters.  *See* Local Rule 105.6 (D. Md. 2016).  For the reasons that follow, the Medical Defendants' Motion, construed as a motion to dismiss, shall be denied.  The County Defendants' Motion, construed as a motion to dismiss, shall be granted as to Baltimore County Detention Center, Bonita Cosgrove, and Stephen Verch, and denied as to Sergeant Ronald Church and Sergeant Martin Leake.

## I. Factual Background

### A.     Plaintiff's factual assertions

Plaintiff alleges that on August 30, 2016, he suffered a stroke and was sent to the University of Maryland St. Joseph Medical Center, where he remained until September 2, 2016. Case II, ECF 1-1 at 4.[6]  His discharge instructions included orders for medication as well as

---

[4] ECF 31 is docketed as a "Motion for Summary Judgment." ECF 31.  In reality, it is a supplemental opposition and is construed as such.

[5] The Clerk shall amend the docket to reflect the correct names of the defendants.

The record reveals that Cosgrove was the Medical Liaison for the Baltimore County Department of Corrections (ECF 27-2, ¶ 2) and Verch was the Management Analyst for the Baltimore County Department of Corrections.  ECF 27-3, ¶ 2.  According to plaintiff, Richardson is the Director of BCDC.

Curiously, apart from Verch and Cosgrove, the defendants have provided little in the way of information to clarify the positions of the individual defendants or the nature or role of CCS. The Medical Defendants merely assert that CCS is Dr. Barnes's employer. ECF 24-1 at 9.

[6] The Medical Defendants indicate that plaintiff was not diagnosed with a stroke.  ECF 24-1 at 2.  The County Defendants indicate that plaintiff did suffer a stroke.  *See, e.g.*, ECF 27-1 at 7.  I must assume the truth of plaintiff's allegations at this juncture, as discussed, *infra*.

3

physical and occupational therapy. *Id*. On October 12, 2016, he underwent assessment at the University of Maryland Medical Center Rehabilitation Department, so that a course of treatment could be developed. *Id*. Plaintiff states that as a result of this assessment, several medical appointments were scheduled for him between October 28, 2016 and November 30, 2016. *Id*. at 5.

According to plaintiff, on numerous occasions the correctional escort staff caused him to be late for his medical appointments. As a result, he missed ten appointments essential to his health. *Id.* at 9.

For example, plaintiff asserts that he arrived over an hour late for his first therapy session, scheduled on October 28, 2016, and therefore he was declined treatment. ECF 1-1 at 5. He was scheduled for a morning appointment on November 2, 2016, but because he arrived late it was rescheduled to the afternoon. *Id*. The afternoon appointment was cancelled because he was again late. *Id*. Sgt. Leake, who is in charge of the processing area at BCDC, on learning that the appointment was cancelled, advised plaintiff that "'if [he] wanted compassion or adequate medical care, [he] should have stayed home . . . It does not affect my pay check.'" *Id*. at 7. Plaintiff adds that he also missed appointments scheduled for November 4, 9, 11, 18, 23, 25, and 30, 2016. Case II, ECF 1-1 at 7.

Plaintiff is confined to a wheelchair. Therefore, he expresses concern that the lack of appropriate rehabilitation will consign him to remain wheelchair bound, without "a decent quality of life . . . ." *Id*. at 6; *see also id.* at 8.

On November 11, 2016, plaintiff sent a request to medical staff regarding the difficulty in his being processed and transported to his physical therapy appointments. *Id.* at 7. Sgt. Church, who was in charge of processing inmates for transport, was contacted "with no success."

*Id.*

Plaintiff was transported to the University of Maryland Medical Center Rehabilitation Department on November 16, 2016, but again arrived late and was declined treatment. *Id.* The physical therapist provided plaintiff a request to give to Dr. Barnes and Bonita Cosgrove so that plaintiff could have access to his tennis shoes in order that plaintiff could practice the exercises he would have performed during physical therapy. *Id.* at 7-8. Plaintiff explains that the tennis shoes were necessary to provide "sure footing and support" while performing his exercises, rather than conducting the exercises in the shower shoes provided by the institution. *Id.* at 8. Plaintiff indicates that the request was not acknowledged and access to his tennis shoes was denied. *Id.*

Mondowney submitted a grievance regarding the occurrences to S. Verch, Bonita Cosgrove, and Deborah Richards. Case II, ECF 1-1 at 8. He received a response to the grievance indicating it was partially substantiated but that no further action would be taken. *Id.*

On February 7, 2017, Lt. Chaddick took plaintiff's rolling walker that had been issued to him pursuant to the order of Mike Swoboda, the Physical Therapist at the University of Maryland. *Id.* at 20. Lt. Chaddick advised plaintiff that he was acting on the orders of Dr. Barnes. *Id.*

Further, plaintiff alleges that on February 9, 2017, Captain Swainn advised him that the water to the shower in his cell had been turned off to insure that plaintiff did not use the shower, because it was not a shower approved under the Americans with Disabilities Act. Case II, ECF 1-1 at 17. He was advised that if he wanted to shower he needed to do it during the 7 am-3 pm shift in a different area. *Id.* Plaintiff states that the alternative shower was not ADA approved either, as it was not wheelchair accessible nor did it have an attached shower chair. *Id.; see also*

*id.* at 25-34. (Plaintiff's ADA complaint forms filed with the ADA Coordinator for Baltimore County).

Plaintiff indicates he advised all medical staff of the numbness in his right leg when he gets out of bed for the day. *Id.* at 17. He claims that Dr. Barnes refused to address the issue despite other medical providers submitting sick call forms on his behalf. *Id.* at 17-18. Further, he claims that he advised medical staff of his desire to comply with the tasks assigned but needed to do them when blood was circulating or he had sensation in his leg. *Id.* at 18. According to plaintiff, being forced to shower and exercise during the day shift placed him at a risk of harm due to the numbness in his leg during that portion of the day. *Id.* at 19.

In addition, plaintiff alleges that Dr. Barnes tried to force him to do exercises and threatened to take his walker away if he did not do the exercises when she wanted him to. *Id.* at 21-23. He claims that Dr. Barnes required him to complete the physical therapy exercise during specific times, not at night as he had been doing, despite plaintiff explaining that "he did not have any feeling in his right leg." *Id.* at 21. Plaintiff also explained that the physical therapist had directed him to wait to do the exercises until the "pins and needles sensation" has subsided." *Id.* at 21, 22, 23. Plaintiff alleges that Dr. Barnes directed his therapy be done in the "'bull pen'" in the medical unit on a 1.5 inch pad, which plaintiff indicates is not appropriate due to the weakness he experiences. *Id.*

According to plaintiff, as a result of filing a civil rights case, his walker was removed, physical therapy was decreased, and his medical documentation revised to indicate he could walk without an assistive device. Case II, ECF 1-1 at 35. He also claims that he was transported from BCDC to JCI on the floor of the vehicle rather than in a seat, and that after review of his medication documentation at the Jessup Regional Hospital "it was determined that the previous

treatments, including physical therapy, were not effective and a consultation with a nerve specialist would be necessary to determine the next course of treatment." *Id.*

### B. Defendants' Responses

#### 1. Medical Defendants

The Medical Defendants argue that CCS is entitled to dismissal as there is no *repondeat superior* liability in § 1983 cases. Case II, ECF 24-1. Further, defendants argue that CCS and Zowie Barnes are entitled to summary judgment as plaintiff has failed to show he suffers from a serious medical need or that defendants were deliberately indifferent to that need. *Id.* at 4. Defendants' motion is accompanied by 50 pages of unauthenticated medical records. ECF 24-3; ECF 24-4; ECF 24-5..

#### 2. County Defendants

The County Defendants maintain that plaintiff has failed to allege any facts to support either an Eighth or Fourteenth Amendment violation. ECF 27-1 at 1. They also claim that he has failed to state a claim of deliberate indifference to a serious medical need, and that based on the record before the court, they are entitled to judgment as a matter of law. *Id.* at 15. The County Defendants also contend that BCDC is not an entity amenable to suit (*id.* at 15) and that they are otherwise entitled to qualified immunity. *Id.* at 16.

The County Defendants' Motion is accompanied by the affidavits of Bonita Cosgrove (ECF 27-2) and Stephen Verch (ECF 27-3). Cosgrove and Verch affirm, based upon their personal knowledge, that Cosgrove investigated plaintiff's complaints regarding the denial of prescribed physical therapy as well as his complaints regarding the proper shoes to be worn during his home exercise regimen. ECF 27-2; ECF 27-3. Each investigation concluded with a determination that the issues had been resolved and Cosgrove reported her findings to Verch. *Id.*

The affidavits also rely on exhibits ECF 27-4, ECF 27-5, ECF 27-6, ECF 27-7, and ECF 28-7. Those exhibits are not authenticated, however.

## II. Standard of Review

### A.

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the

claim asserted." *Johnson v. City of Shelby, Miss.*, ___ U.S. ____, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts generally do not "'resolve contests surrounding the facts, the merits of a claim, or

the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards*, 178 F.3d at 243 (citation omitted). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 533 F.3d 334, 336 (4th Cir. 2009); *see also U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 148 (4th Cir. 2014). However, because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint*.'" *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis added in *Goodman*).

In evaluating the sufficiency of a complaint in connection with a Rule 12(b)(6) motion, a court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger v. U.S. Airways,* 510 F.3d 442, 450 (4th Cir. 2007). However, without converting a motion to dismiss to a motion for summary judgment, a court may properly consider documents expressly incorporated into the complaint or attached to the motion to dismiss, "'so long as they are integral to the complaint by reference and authentic.'" *U.S. ex rel. Oberg,* 745 F.3d at 136 (quoting *Philips v. Pitt Cty. Memorial Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009)); *see Six v. Generations Federal Credit Union*, 891 F.3d 508, 512-13 (4th Cir. 2018); *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015); *Anand v. Ocwen Loan Servicing, LLC,* 754 F.3d 195, 198 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.,* 367 F.3d 212, 234 (4th Cir. 2004).

To be "integral" a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original). *See also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the [party] attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)). "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167.

A court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 558 (2017); *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012).

**B.**

Defendants' motions are styled as motions to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See*

*Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 Fed App'x. 220, 222 (4th Cir. 2016) (per curiam). However, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth*., 149 F.3d 253, 261 (4th Cir. 1998).[7]

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed.

_____

[7] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *Id.* (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp*., 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Adams Housing, LLC*, 672 Fed. App'x at 222 ("The court must give notice to ensure that the party is aware that it must 'come forward with all of [its] evidence.'") (Citation omitted).

2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165, 167.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2012); *see Putney v. Likin*, 656 Fed. App'x 632, 638 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015); *see Putney v. Likin*, 656 Fed. App'x 632, 638 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). A party "needs an 'adequate opportunity' to present its case and 'demonstrate a genuine issue of material fact.'" *Adams Housing, LLC*, 672 Fed. App'x at 222 (citation omitted). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).

To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'"

*Scott v. Nuvell Fin. Servs., LLC*, 789 F.Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F.Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 Fed. App'x 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted).

According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Harrods*, 302 F.3d at 244-45 (internal citations omitted); *see also Putney*, 656 Fed. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961

(4th Cir. 2008). Moreover, "[t]his is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 Fed. App'x at 638.

<h2 style="text-align:center">C.</h2>

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.; *see Sharif v. United Airlines, Inc.,* 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton*

*Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002); *see Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility.

Nevertheless, to defeat summary judgment, any conflicting evidence must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

### D.

Plaintiff is self-represented. Therefore, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative

obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

## III. Discussion

### A.    Personal participation

Section 1983 of 42 U.S.C. provides, in part, that "[e]very person who, under color of [state law], *subjects, or causes to be subjected*, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983 (emphasis added)).

To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997). The phrase "under color of state law" is an element that "is synonymous with the more familiar state-action requirement—and the analysis for each is identical." *Philips v. Pitt Cty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 929 (1982)).

Section 1983 also requires a showing of personal fault based upon a defendant's own conduct. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights). Thus, there is no

respondeat superior liability under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

Liability of supervisory officials in § 1983 claims "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). With respect to a supervisory liability claim in a § 1983 action, a plaintiff must allege:

> (1) That the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to . . . the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 813 (1994); *see also Wilcox*, 877 F.3d at 170.

Under § 1983, Deborah Richardson, the Director of BCDS, was not responsible for the provision of medical care.[8] There is no allegation that Richardson authorized an unconstitutional act. Plaintiff's complaint against Richardson shall be dismissed.

Additionally, there are no allegations of wrongdoing with respect to the conduct of defendants Cosgrove and Verch, who merely investigated plaintiff's complaints. Decisions by

---

[8] Curiously, the County Defendants' Motion was not filed on behalf of Deborah Richardson. It is clear, however, that, given Richardson's position as the Director of BCDC, plaintiff seeks to hold her responsible on the basis of *respondeat superior*. His case against her cannot proceed on such a theory.

correctional staff considering inmate complaints, without more, does not establish personal participation in the alleged constitutional violation. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) ("[A] denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983"); *Atkins v. Maryland Div. of Correction*, 2015 WL 5124103 at *6 (D. Md. 2015) (act of denying grievances); *Scott v. Padula*, 2010 WL 2640308, *3 (D. S.C. 2010) (failure to investigate or process a grievance). As such, the suit shall be dismissed as to defendants Cosgrove and Verch.

The County Defendants argue that BCDC is not a legal entity subject to suit in its own name. I agree.

Maryland law determines whether an entity possesses the legal capacity to be sued. *See Chrysler Credit Corp. v. Superior Dodge, Inc*., 538 F. 2d 616, 617-18 (4th Cir. 1976). Charter counties of Maryland, such as Baltimore County, may "sue and be sued". Md. Code Ann. Local Gov't § 9-201(2). Additionally, the Baltimore County Charter provides, in pertinent part: "The corporate name *shall* be 'Baltimore County, Maryland,' and it *shall* thus be designated in all actions and proceedings touching its rights, powers, properties, liabilities, and duties." (Emphasis added). Baltimore County Charter § 103.

BCDC is a department within Baltimore County's administrative structure and consequently not subject to suit in its own name. *See Farmer v. Baltimore Cty. Dep't of Corrs.*, Civil Case Nos. CCB-11-2126, CCB-11-2143, 2012 WL 3155650 *3 (D. Md. July 31, 2012); *Cty. Council for Montgomery County v. Supervisor of Assessments of Montgomery County*, 274 Md. 116, 123, 332 A.2d 897 (1975) ("County Council" is not a separate legal entity that can sue or be sued); *Ashburn v. Anne Arundel County*, 306 Md. 617, 620, 510 A.2d 1078 (1986)

(observing that the circuit court found "Anne Arundel County Police Department was not a separate legal entity" subject to suit). Therefore, the court will dismiss the case as to BCDC.

### B. Deliberate Indifference to Serious Medical Needs

Plaintiff complains about inadequate medical care at BCDC. Presumably, while plaintiff was at BCDC, he was a pretrial detainee.

The Due Process Clause of the Fourteenth Amendment protects the rights of pretrial detainees to receive adequate medical care. *Hill v. Nicodemus*, 979 F.2d 987, 990-91 (4th Cir. 1992); *see also Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001) (stating, *inter alia*, that if the decedent "was a pretrial detainee rather than a convicted prisoner, then the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, mandates the provision of medical care to *detainees* who require it") (emphasis in *Brown*) (internal quotation marks omitted; citation omitted) (citing, *inter alia*, *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983); and *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979)).

Pretrial detainees "retain at least those constitutional rights [held] by convicted prisoners." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *see also Patten v. Nichols*, 274 F.3d 829, 834 (4th Cir. 2001). And, a prison official violates a detainee's Fourteenth Amendment rights when the official is deliberately indifferent to the detainee's serious medical needs. *See Young v. City of Mount Ranier*, 238 F.3d 567, 575 (4th Cir. 2001) ("[D]eliberate indifference to the serious medical needs of a pretrial detainee violates the due process clause."); *see also Hill*, 979 F.2d at 991 (adopting the standard of "deliberate indifference" with respect to the level of care owed to a pretrial detainee under the Fourteenth Amendment); *Gordon v. Kidd*, 971 F.2d 1087, 1094 (4th Cir. 1992) ("Pretrial detainees, like inmates under active sentence, are entitled to medical attention, and prison officials violate detainees' rights to due process when they are

deliberately indifferent to serious medical needs.") (emphasis added).

The Eighth Amendment protects the rights of postconviction detainees. *Brown v. Harris*, 240 F.3d at 388 ("'[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.'") (quoting *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977)). It prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016).

A claim of denial of adequate medical care, whether lodged under the Eighth Amendment or the Fourteenth Amendment, requires a court to analyze the same issue: whether there was deliberate indifference to a serious medical need. *See Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990) ("The Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any serious medical needs of the detainee.") (citing *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir. 1988)). Therefore, I turn to review the Eighth Amendment.

"Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *DeLonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). The protection conferred by the Eighth Amendment imposes on prison officials an affirmative "obligation to take reasonable measures to guarantee the safety of . . . inmates." *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986); *see Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Raynor*, 817 F.3d at 127.

The deliberate indifference standard is analyzed under a two-pronged test: "(1) the

prisoner must be exposed to 'a substantial risk of serious harm,' and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety." *Thompson v. Virginia*, 878 F.3d 89, 97-98 (4th Cir. 2017) (quoting *Farmer*, 511 U.S. at 834, 837-38). "The necessary showing of deliberate indifference can be manifested by prison officials in responding to a prisoner's medical needs in various ways, including intentionally *denying* or *delaying* medical care, or intentionally *interfering* with prescribed medical care." *Formica v. Aylor*, ___ F. App'x ___, 2018 WL 3120790, at *7 (4th Cir. June 25, 2018) (emphasis in *Formica*).

For a plaintiff prisoner to prevail in a suit alleging the denial of adequate medical care, the defendant's actions or inaction must amount to deliberate indifference to a serious medical need. *See Estelle*, 429 U.S. at 106; *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Deliberate indifference to a serious medical need requires proof that, objectively, the plaintiff was suffering from a serious medical need and that, subjectively, the defendant was aware of the need for medical attention but failed either to provide it or to ensure that the needed care was available. *See Farmer*, 511 U.S. at 837; *see also DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018); *King*, 825 F.3d at 219. The Fourth Circuit has characterized the applicable standard as an "exacting" one. *Lightsey*, 775 F.3d at 178.

A "'serious . . . medical need'" is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko*, 535 F.3d at 241 (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)); *see Scinto*, 841 F.3d at 228. And, in a case involving a claim of deliberate indifference to a serious medical need, the inmate must show a "significant injury." *Danser v. Stansberry*, 772 F.3d 340, 346 n.8 (4th Cir. 2014).

The subjective component of the standard requires a determination as to whether the

defendant acted with reckless disregard in the face of a serious medical condition, *i.e.*, with "a sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298; *see Farmer*, 511 U.S. at 839-40; *Scinto*, 841 F.3d at 225. Put another way, "it is not enough that the defendant *should* have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Lightsey*, 775 F.3d at 178 (emphasis in *Lightsey*). The Fourth Circuit has said: "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997); *see also Young*, 238 F.3d at 575-76 ("Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care.").

Yet, the Supreme Court concluded in *Farmer* that "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." 511 U.S. at 844; *accord Brown*, 240 F.3d at 390-91. The Constitution requires prison officials to ensure "reasonable safety," a standard that acknowledges prison officials' "unenviable task of keeping [sometimes] dangerous [people] in safe custody under humane conditions[.]" *Id.* at 845 (citations and quotation marks omitted). Accordingly, "prison officials who act reasonably cannot be found liable" under the deliberate indifference standard. *Id.*; *see also Short v. Smoot*, 436 F.3d 422, 428 (4th Cir. 2006) (finding that an officer who responds reasonably to a danger facing an inmate is not liable under the deliberate indifference standard, even when further precautions could have been taken but were not); *Stritehoff v. Green*, CCB-09-3003, 2010 WL 4941990, at *3 (D. Md. Nov. 30, 2010) ("An officer who responds reasonably to 'the risk of which he

actually knew' is not liable for deliberate indifference.") (quoting *Brown*, 240 F.3d at 390-91).

Notably, deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness" and, "as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Lightsey*, 775 F.3d at 178; *see also Scinto*, 841 F.3d at 225; *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986). In *Estelle*, 429 U.S. at 106, the Supreme Court said: "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."

What the Court said in *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999), *cert. denied,* 529 U.S. 1067, (2000), is also pertinent: "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences . . . ." *See also Young*, 238 F.3d at 576 (stating that a Fourteenth Amendment deliberate inference claim requires more than a showing of "mere negligence"); *Johnson v. Quinones*, 145 F.3d 164, 166 (4th Cir. 1998) ("[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference.").

Although the deliberate indifference standard "'entails more than mere negligence . . . it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *King*, 825 F.3d at 219 (quoting *Farmer*, 511 U.S. at 835). A plaintiff can meet the subjective knowledge requirement through direct evidence of a prison

official's actual knowledge or circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer*, 511 U.S. at 842).

Of course, if a risk is obvious, a prison official "cannot hide behind an excuse that he was unaware of a risk." *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995). But, an inmate's mere disagreement with medical providers as to the proper course of treatment does not support a claim under the deliberate indifference standard. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Wester v. Jones*, 554 F.2d 1285 (4th Cir. 1977). Rather, a prisoner-plaintiff must show that the medical provider failed to make a sincere and reasonable effort to care for the inmate's medical problems. *See Startz v. Cullen*, 468 F.2d 560, 561 (2d Cir. 1972); *Smith v. Mathis*, PJM-08-3302, 2012 WL 253438, at * 4 (D. Md. Jan. 26, 2012), *aff'd*, 475 F. App'x 860 (4th Cir. 2012); *Lopez v. Green*, PJM-09-1942, 2012 WL 1999868, at * 2 (D. Md. June 3, 2012); *Robinson v. W. Md. Health Sys. Corp.*, DKC-10-3223, 2011 WL 2713462, at *4 (D. Md. July 8, 2011). And, the right to medical treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977).

Construing the allegations in plaintiff's Complaint liberally, and in his favor, as I must, he alleges that he suffered a stroke and that CCS, Dr. Barnes, Officer Leake, and Officer Church interfered with prescribed medical treatment by failing to insure that he was transported timely to scheduled physical therapy appointments. He further alleges that Barnes denied him his medically prescribed walker and tennis shoes and that she forced him to participate in a home

exercise regimen as well as take showers at times that were medically unsafe for him. He claims that some of the conduct alleged violated his rights under the Americans with Disabilities Act.

CCS and Dr. Barnes dispute that plaintiff had a stroke. They also contend that the treatment provided to plaintiff was adequate and that his complaints amount to little more than a disagreement about appropriate medical care. The Motion, however, is not supported by an affidavit or by properly authenticated medical records. As such, the County Defendants' Motion shall be denied, without prejudice.

Defendants Leake and Church have failed to respond to plaintiff's allegations that they interfered with or were deliberately indifferent to his transportation needs relative to scheduled medical appointments or his claims under the ADA.[9] As such, the County Defendants' Motion shall be denied as to Leake and Church, without prejudice.

A separate Order follows.


<u>September 11, 2018</u>                           <u>      /s/                         </u>
Date                                                Ellen L. Hollander
                                                  United States District Judge

---

[9] Barnes, Leake, and Church have also failed to respond to plaintiff's claims of retaliation. In addition, they argue entitlement to qualified immunity. But, assuming, *arguendo*, the truth of plaintiff's allegations, the basis for that defense is not apparent from the record.